# EXHIBIT A

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

CHANCERY COURT SHELBY COUNTY, TENNESSEE
WESTERN DISTRICT OF TENNESSEE

CAMERON BURRELL

Plaintiff

V.

CASE NO: 19-1967

INDIGO AG INC.

Defendant

---

AMENDED PETITION FOR INJUNCTIVE RELIEF AND MONEY DAMAGES

---

Come Now the Plaintiff herein by and through counsel  record pursuant to T.R.C.P. 65 and move this Honorable court for a Permanent Injunction restraining and enjoining Defendant Indigo Ag from making penalty deductions from the account of Cameron Burrell regarding certain cancellation costs and additional transportation   costs   as the initial monies in the account are encumbered by a

1

Landlord's lien held by the State of Mississippi pursuant to Mississippi Code Annotated 87-1-55. Attached hereto as Exhibit A.

1. Mr. Burrell has farmed certain lands in Sunflower County ( Parchman Prison Ground ) Mississippi pursuant to contract with the State of Mississippi containing approximately 838 acres for a period of **EIGHT YEARS**. Said rental payment is due by December 1st of each crop year. Said contract is attached hereto as Exhibit B.

2. On or about September 26, 2019 Petitioner Burrell entered into a crop marketing contract with a Tennessee corporation name **Indigo Ag** located at 50 South B.B. King Blvd, Memphis, Tennessee 38103. This agreement was for the delivery of 5 (10,000 bushel) contracts of # 2 yellow soybeans. The contracts with Indigo Ag are attached hereto as collective Exhibit C.

3. Moreover, on or about September 30, 2019 Petitioner received a telephone call from an Indigo Ag employee named Amber Blair who inquired, among other things as to whether there were any existing liens that Petitioner may have had on the 2019 soybean crop and methods of payment to Mr. Burrell. Petitioner Burrell explained to Ms. Blair that he would reach out to officials at the State of

2

Mississippi regarding setting up communication as to how to facilitate the payments from Indigo to the State of Mississippi. Petitioner Burrell did in fact communicate with State of Mississippi officials, advising them of his arrangement and informing them of his agreement with Indigo and providing Indigo. The requisite information necessary to facilitate payments.  There was also a subsequent E-Mail correspondence between Your Petitioner and Ms. Mary Gammel on October 4, 2019 wherein, they  discussed the State of Mississippi's  Landlord  Lien and paying the rental amount of $ 89,604.00 owning to the state of Mississippi  in satisfaction of the Landlord  lien and that rent was to be paid to Mississippi State. The October 4, 2019 email attached hereto as Exhibit D shows that Ms. Gammel spoke to Mississippi officials on October 3, 2019. See attached Exhibit D.

4. Your Affiant does herein acknowledges that he has not been able to complete the harvesting of his 2019 soybean crop but is now convinced that he will not be able to deliver the total contract amount herein referenced of 50,000 bushels.

5. On or about November 20, 2019, Your Affiant called the Indigo Ag office in Memphis **and indicated** that Your Petitioner wanted to sell

3

the referenced soybean in order to satisfy the rental payment ($89,000) to Mississippi State. However, Petitioner was told by Mr. Mcclain at the Indigo Company that there was a penalty of approximately $48,000 that would have to be taken out of the rental payment to Mississippi State to satisfy the referenced venalities.

6. Subsequently counsel for Indigo sent a letter detailing Indigo's intention to impose a cancellation penalty and make consequent deductions from funds otherwise owning to the State of Mississippi for their rental. See Attached Exhibit E. Exhibit E demonstrates the immediacy of Petitioner's need for intervention by this court to prevent the irreparable harm that would certainly ensue to Petitioner from the disregarding of the right of the Landlord.

7.     Your Affiant maintains that his contract with the State of Mississippi will be revoked and canceled if Indigo Ag does not honor the landlord lien to the State of Mississippi and that his ability to continue his farming career will be lost if Indigo Ag is allowed to withhold any rental funds otherwise owing to satisfy the lien for the 2019 crop year to Mississippi State. Moreover,

8. Additionally, Your Affiant is eligible to receive approximate $42,000 from the United Stated Department of Agriculture which is otherwise available to

4

all soybean farmers who are declared at risk from any tariffs involving the

United State and China. This payment is expected by January 15, 2020.  See

Exhibit Marked as F.

9. Your Petitioner avers that attached hereto is the recorded priority landlord

lien of the State of Mississippi as Exhibit G.


## ARGUMENT

Upon the facts of this case, a permanent  injunction should be issued.

The four factors to be considered by the court are as follows:

1. A substantial likelihood of success on the merits;

2. Irreparable injury if the injunction is not issued;

3. The threatened injury outweighs whatever harm the issuance of an injunction

may cause the opposing party; and

4. The injunction would not be adverse to the public interest. McDonald's Corp. v.

Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); Shatel Corp. v. Mao Ta Lumber

and Yacht Corp., 697 F.2d 1352, 1354-55 (11th Cir. 1983); Canal Authority, 489

F.2d at 572; Simon v. Culverhouse, 609 F. Supp. 1050, 1051 (S.D. Fla. 1985).

We consider, in turn, each of the elements of this standard, as applied to the

facts of this case.

.      The Public Interest Will Be Served By Issuance of the Injunction

The standard for a **preliminary injunction** is essentially      the same as for

a **permanent injunction**," except that a plaintiff must show actual success for a

**permanent injunction**, rather than simply a likelihood of success on the merits.

*Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94

L. Ed. 2d 542 (1987); *see Am. Civil Liberties Union of Ky. v. McCreary Cnty.,* 607

F.3d 439, 445 (6th Cir. 2010).  In addition, when a plaintiff seeks a **permanent**

**injunction**, "[a]n evidentiary hearing typically is required before an **injunction**

may be granted, but a hearing is not necessary where no triable issues of fact are

involved." *United States v. Miami Univ.,* 294 F.3d 797, 815 (6th Cir. 2002) (citing

*United States v. McGee,* 714 F.2d 607, 613 (6th Cir. 1983)).  Backpage.com, LLC

v. Cooper, 2013 U.S. Dist. LEXIS 43852, *2-3, 2013 WL 1249063

Pursuant to Tennessee case law, there are four factors to be considered by a

trial court in deciding whether to issue a temporary **injunction**:

a. the threat of irreparable harm,

b. the balance between the harm to be prevented and the injury to be

inflicted if the **injunction** issues,

c. the probability that the applicant will succeed on the merits, and

d. the public interest.

With respect to **permanent** injunctive relief, the analysis differs somewhat as, in the typical situation; the court has ruled in favor of the applicant on the merits and must determine whether **permanent** injunctive relief is an appropriate remedy. Curb Records, Inc. v. McGraw, 2012 Tenn. App. LEXIS 670, *1, 2012 WL 4377817

We consider, in turn, each of the elements of this standard, as applied to the facts of this case.

### (1.)   Substantial Likelihood of Success on the Merits

Petitioner has presented a statute (Mississippi Code Annotated 89-7-51) which provided in pertinent parts that:

**"Every lessor of land shall have a lien on the agricultural products of the lease premises, however, and by whosoever produced, to secure the payment of the rent and of money advanced to the tenant…"**

As noted above, Tennessee also has such a statute located at Tennessee Code Annotated 66-12-101 Exhibit B stating:

**That A landlord and one controlling land by lease or otherwise shall have a lien on all crops grown on the land during the year for the payment of the rent for the year, whether the contract of rental be verbal or in writing, and this lien shall inure to the benefit of the assignee of the lienor.**

Therefore, it is clear from the reading of this statute that the State of

Mississippi, as the landlord, has a superior interest in the agricultural product and

it's resulting cash proceeds.   The proof presented at this hearing demonstrates the

actual success on the merits of Petitioner Burrell in that the landlord's lien of both

Mississippi and Tennessee are well established regarding the priority of the

landlord's lien.  Both the Mississippi and the Tennessee statutes clearly indicate

the priority of the landlord lien.

### (2) Irreparable Injury if the Injunction is Not Issued

With regard to irreparable harm, Petitioner will suffer the unlawful default

and resulting loss of his leasehold interest with the State of Mississippi. As

recognized by Congress as a military veteran  eligible for special benefits as

codified under 7 CFR   beginning in the Farming industry , the new and beginning

farmers as codified at 7 CFR Farm program and a socially disadvantaged Farmer

for whom the loss of a lease would have long ranging detrimental implications.

there can be no doubt that Plaintiffs will suffer irreparable injury if Defendant in

this action are permitted to continue to engage in their sanctions and charges

Plaintiff will lose the source of his livelihood .It is his sole means of livelihood,

this eight year lease and its corresponding 838 acres provides Petitioners means of

income since he has been honorably discharged from the military.  It is widely

recognized that conduct such as Defendant's inflicts irreparable injury upon

8

Plaintiffs because Defendant's actions will lead immediately to the loss of an irreplaceable leasehold interest and substantial economic injury and damage to Plaintiff . The letter from the State of Mississippi attached hereto as Exhibit C demonstrates the economic impact at issue for Petitioner Burrell.

**(3) The Threatened Injury Outweighs Whatever Harm the Issuance of an Injunction May Cause the Opposing Party**

The next factor to be considered by this court is whether or not the balance of hardships tips in favor of Plaintiffs.  As has been demonstrated above, the harm to Plaintiffs, absent an injunction, would be irreparable. The inconvenience to Respondent Indigo , upon issuance of the permanent  Injunction, would be merely economic, consisting primarily, if not entirely, of a reamortization of Petitioner's indebtedness. Given the probable outcome of this action; this is a loss that Defendant may justifiably be called upon to bear. See Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321, 1328, 164 U.S.P.Q. (BNA) 435 (S.D. N.Y. 1970), opinion aff'd, 432 F.2d 784, 167 U.S.P.Q. (BNA) 421 (2d Cir. 1970.  A viable economic alternative for Indigo could exist in the form of an opportunity for Mr. Burrell to re-amortize the outstanding debt.  Re-amortization of Mr. Burrell's indebtedness creates a delay to Indigo, however, a delay to Indigo is nowhere near the extent of the damage Indigo as to the grievous losses stemming from a total default in his leasehold interest (868 acres) with the State of Mississippi that would

9

be incurred by the Petitioner Burrell. .    Moreover, the letter to Mr. Burrell from the state of Mississippi makes it abundantly clear that Mr. Burrell will indeed be ousted from the only farmland for which his livelihood depends upon.  The threatened injury to Plaintiffs far outweighs whatever harm the issuance of an injunction may cause Defendant.

To be sure, Mr. Burrell, as being (a) a member of a minority class and (b) a person who has served this country (veteran) is considered by Congress as someone being eligible to certain provision of the special remedies that congress instructed the Department of Agriculture (FSA-Farm Service Agency) to safeguard under & U.S.C Section 2501e (2) of the Food, Agriculture, Conservation and Trade Act of 1990, as amended, as follows:

The term "Socially Disadvantaged Farmer" is defined in previous legislation, Section 2501e (2) of the Food, Agriculture, Conservation and Trade Act of 1990 (7 USC 2279e (2).

A socially disadvantaged Farmer or Rancher is a farmer or rancher who has been subjected to racial or ethnic prejudices because of their identity as a member of a group without regard to their individual qualities. This term means a farmer or rancher who is a member of a socially disadvantaged group.  Specifically, a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities. Those groups include African Americans, American Indians or Alaskan natives, Hispanics and Asians or Pacific Islanders.

Likewise:

While FSA is fully committed to all farmers and ranchers, there is a special focus on the particular credit needs of farmers and ranchers who are in their first 10 years of operation. Each year, FSA targets a portion of its lending by setting aside a portion of all loan funds

10

for financing beginning farmer and rancher operations. With the single exception of the Direct Farm Ownership Down Payment Loan, the Beginning Farmer classification is not related to a type of loan program; it references a specific

Practitioner Burrell was granted an EIGHT YEAR lease agreement from the State of Mississippi and has a remaining SEVEN YEARS on his contract with the State of Mississippi.  Moreover, he has no other leases for which he can continue his farming career and therefore will suffer grievous losses if this requested permanent injunction is not granted.

It is widely recognized that conduct such as Defendant's inflicts irreparable injury upon Plaintiffs because Defendant's actions will lead immediately to the loss of an irreplaceable leasehold interest and substantial economic injury and damage to Plaintiff.  The equities also weigh in this direction as Respondent Indigo had prior knowledge in October of 2019  of the Mississippi crop and landlord lien. See attached Exhibit D (Emails from Indigo indicating knowledge of the Mississippi landlord  and contact with the Mississippi landlord)

**(4) The Public Interest Will Be Served By Issuance of the Injunction**

When considering whether to grant injunctive relief, the courts examine and consider the public interest.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 47 U.S.P.Q.2d (BNA) 1545, 41 Fed. R. Serv. 3d 455 (11th Cir. 1998); All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537, 15 Fed. R. Serv. 3d 535 (11th Cir. 1989).  Congress has expressed the public interest

11

in the socially disadvantaged farmer legislation and rulemaking codified at

Section 2501e (2) of the Food, Agriculture, Conservation and Trade Act of 1990 (7

USC 2279e (2).

> A socially disadvantaged Farmer or Rancher is a farmer or rancher who has been subjected to racial or ethnic prejudices because of their identity as a member of a group without regard to their individual qualities. This term means a farmer or rancher who is a member of a socially disadvantaged group.  Specifically, a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities. Those groups include African Americans, American Indians or Alaskan natives, Hispanics and Asians or Pacific Islanders.

It is without doubt that congress considered the need for new and beginning

farmers and ranchers—such as Petitioner Burrell—and their corresponding

livelihood and viability when it's enacted the special remedies favoring  beginning

and veteran farmers when it authorized the Department of Agriculture (FSA) to

extend credit and loan benefits to these individuals.  Accordingly, the interest of

the nation—inherent in these congressional provisions—and public will be served

if this court grants Practitioner Burrell this Permanent Injunction.

## CONCLUSION

The relief sought by this Motion for injunctive relief, Permanent Injunction,

serves the public interest , the goals of Congress enacted in the socially

disadvantaged farmer legislation and the Landlord lien  statutes of Mississippi and

Tennessee.

12

## CAUSES OF ACTION

Petitioner Burrell realleges and incorporates all of the foregoing above as though fully set forth verbatim herein. The claims herein are alleged in the alternative and in addition to each other.

Comes now Petitioner Burrell and brings suit against Indigo Ag for Breach of Contract and for Intentional and Negligent Interference with Business Relationship.

## Count I

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP

Indigo has intentionally interfered with the business relationship between the State of Mississippi and Cameron Burrell.

One who intentionally and *improperly* interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the **interference** consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
(b) preventing the other from acquiring or continuing the prospective relation.

13

(emphasis added).

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 700, 2002 Tenn. LEXIS 154, *18

     Specifically, the elements of the tort and burden-of-proof requirements, as originally adopted by several jurisdictions, included: (1) the existence of a business relationship or expectancy (not necessarily contractual); (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of **interference**; (4) proof that the **interference** caused the harm sustained; and (5) damage to the plaintiff. Id. at 645 n.3 (quoting Quality Auto Parts Co., 876 S.W.2d at 823).

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 699, 2002 Tenn. LEXIS 154, *16

     Indigo, Inc has improperlyintentionally  interfered with the business relationship between the State of Mississippi and Cameron Burrell preventing Cameron burrell from continuing the business relationship with the State of Mississippi thereby causing substantial and severe pecuniary loss and harm to Cameron Burrell whereby Cameron Burrell has suffered the loss of the benefit of the relationship.

## COUNT II

## NEGLIGENT INTERFERENCE WITH BUSINESS RELATIONSHIP

     Indigo has  improperly negligently interfered with  the business relationship between the State of Mississippi and Cameron Burrell preventing Cameron burrell from continuing the business relationship with the State of Mississippi thereby causing substantial and severe pecuniary loss and harm to Cameron Burrell whereby Cameron Burrell has suffered the loss of the benefit of the relationship.c

14

## COUNT III

## BREACH OF CONTRACT

Indigo was fully advised that the State of Mississippi had a Landlord's lien on Cameron Burrell's crop. Indigo employees and agents discussed the payment of the Landlord's lien with Mr. Burrell When Indigo did receive the proceeds of the crop yield, Indigo refused and failed to pay the Landlord's lien thereby causing substantial and severe economic injury to Cameron Burrell. There existed a contract between Cameron Burrell and Indigo for Indigo to pay the Landlord's lien. Indigo breached that contract. As a result of Indigo's breach, Cameron Burrell has suffered grievous  substantial economic injury and losses

Respectfully Submitted

Paul A. Robinson Jr. #014464
3749 Marty Street
Memphis, TN 38109
Telephone (901) 649-4053
Fax (901) 328-1803

15

16

12/4/2019    Case 2:20-cv-02039-MSN-jlk and Document 1-1 (2010 Mississippi Code DS Code and Statute: US Law Justia Page 1 24

Ex A

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT



View the **2018 Mississippi Code** | View Other Versions of the Mississippi Code

# 2010 Mississippi Code
# TITLE 89 - REAL AND PERSONAL PROPERTY
# Chapter 7 - Landlord and Tenant.
# 89-7-51 - Lien of landlord.

**§ 89-7-51. Lien of landlord.**

(1) Every lessor of land shall have a lien on the agricultural products of the leased premises, however and by whomsoever produced, to secure the payment of the rent and of money advanced to the tenant, and the fair market value of all advances made by him to his tenant for supplies for the tenant and others for whom he may contract, and for his business carried on upon the leased premises. This lien shall be paramount to all other liens, claims, or demands upon such products when perfected in accordance with Uniform Commercial Code Article 9 - Secured Transactions (Section 75-9-101, et seq.). The claim of the lessor for supplies furnished may be enforced in the same manner and under the same circumstances as his claim for rent may be; and all the provisions of law as to attachment for rent and proceedings under it shall be applicable to a claim for supplies furnished, and such attachment may be levied on any goods and chattels liable for rent, as well as on the agricultural products.

(2) All articles of personal property, except a stock of merchandise sold in the normal course of business, owned by the lessee of real property and situated on the leased premises shall be subject to a lien in favor of the lessor to secure the payment of rent for such premises as has been contracted to be paid, whether or not then due. Such lien shall be subject to all prior liens or other security interests perfected according to law. No such articles of personal property may be removed from the leased premises until such rent is paid except with the written consent of the lessor. All of the provisions of law as to attachment for rent and proceedings thereunder shall be applicable with reference to the

EXHIBIT
A

Case 2:20-cv-02033-MSN-dkv Document 1-1 Filed 01/16/20 Page 19 of 32 PageID 25

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

Ex A (cont)

lessor's lien under this subsection.

**Sources:** Codes, 1880, § 1301; 1892, § 2495; 1906, § 2832; Hemingway's 1917, § 2330; 1930, § 2186; 1942, § 908; Laws, 1972, ch. 343, § 1; Laws, 2001, ch. 495, § 34, eff from and after Jan. 1, 2002.

**Disclaimer:** These codes may not be the most recent version. Mississippi may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.

ELECTRONICALLY FILED
2020 Jan 16 12:48 AM
CLERK OF COURT

# LEASE CONTRACT
# MISSISSIPPI STATE PENITENTIARY LAND

THE DEPARTMENT OF FINANCE AND ADMINISTRATION THROUGH THE BUREAU OF BUILDING, GROUNDS AND REAL PROPERTY MANAGEMENT ON BEHALF OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS / MISSISSIPPI STATE PENITENTIARY HEREAFTER KNOWN AS LESSOR, MAKES THIS CONTRACT TO LEASE:

WITH: _Camron L. Burrell____ -Hereafter known as LESSEE

The Department of Finance and Administration through the Bureau of Building, Grounds and Real Property Management, on behalf of the Mississippi Department of Corrections / Mississippi State Penitentiary, hereinafter referred to as LESSOR, 501 North West Street, Suite 1401B, Jackson, Mississippi 39201, hereby Leases to:

Camron L. Burrell
1948 Autumndale Cove
Cordova, TN 38016

hereinafter referred to as LESSEE, the following described lands, hereinafter referred to as TRACT:

TRACT NUMBER: _3_

COUNTY: _Sunflower_____ on the following terms and conditions:

## CONDITION NUMBER 1:

This Lease is entered into in accordance with and pursuant to the authority provided in Sections 47 - 5 - 64 and 47 - 5 - 66 of the *Mississippi Code of 1972, Annotated,* as amended. LESSOR and LESSEE acknowledge that said Tract was recommended by the Mississippi Department of Corrections and that the statutory requirements relating to the advertisement for bids and award of Leases have been complied with.

## CONDITION NUMBER 2:

The Tract of land listed above is generally described on Exhibit A hereto attached. This is a Lease by Tract Number and not by the acre. The LESSOR does not warrant the number of acres of land in the respective Tract.

## CONDITION NUMBER 3:

The primary term of this Lease shall be for a period of ~~three (3)~~ Eight (8) years years commencing on ____April 3rd, 2019_ and ending on _____January 14_____, 202~~1~~7 in accordance with Mississippi Code Section 47-5-64 . . . *for not less than three (3)....years....and no more than eight (8).*

The current period is for Year __1__ on said three (3) year lease beginning ____April 3rd_, 2019 and ending on ____January 14_____, 2020.

Lease rent, in full, shall be due annually, in accordance with Condition Number 4b through 4d of the original Lease, and in accordance with Mississippi Code Section 47-5-66 . . . *shall be due on the anniversary date for each following year of the lease. . . .* including primary and renewal terms.

All other terms and conditions of the Original Lease shall remain the same.

## CONDITION NUMBER 4:

If, upon expiration of the primary term of this lease, LESSOR shall decide to re-lease the subject property, LESSEE, at the option of LESSOR, shall have the right to renew the existing lease under the same terms and conditions as set forth herein for additional terms of one year each. In order to exercise said right LESSEE must comply with the following:

B.   Rent for the prior term must have been paid in full by October 30th of the primary term or renewal period, as the case may be;

C.   Payment of twenty-five percent (25%) of the annual rental for the renewal lease term must be made to LESSOR at signing or prior to the signing of the renewal contract.

D.   Payment of nine dollars ($9.00) per acre in lieu of taxes must be made payable by Certified or Cashier's Check to the Tax Collector of the County in which the land is located and delivered to the LESSOR at signing or prior to signing of the primary lease contract.

In no event shall the total term of the Lease, including primary and renewal terms, exceed eight (8) years. (SB2597 '07)

## CONDITION NUMBER 5:

LESSEE shall pay to LESSOR as rent for the use and possession of the Tract the sum of $67,350.00 per year due and payable as follows:

Not less than ___10___% of the yearly amount of bid shall accompany LESSEE's bid and will be deposited into the Prison Industries Fund and credited toward the rent due by the LESSEE upon the date of award of this Lease to the LESSEE from the LESSOR.

The balance of the rent due is to be paid to LESSOR not later than the date the LESSEE shall take possession of the herein described property as awarded by the LESSOR.  For this Lease, the said date of possession shall be _April 3rd, 2019_ :

## OR; (If Approved By LESSOR):

The balance of the rent due shall be secured to the LESSOR by the assignment of payment of funds to be received by the LESSEE from the Federal Government through the FSA / USDA Office.  Said assignment shall be in proper form as specified by the FSA / USDA. Said assignment shall be delivered to the LESSOR no later than the date the LESSEE shall take possession of the herein described property.

Furthermore, The LESSEE agrees to pay rent in full or assign to the LESSOR a first lien mentioned above against the crops planted on the property described herein plus any and all crop insurance proceeds in an amount sufficient to cover any shortage of rent plus a 10% to be charged as additional rent due by the LESSOR as rent should the payment secured to the LESSOR by Assignment of Revenue to be received by the LESSEE from the Federal Government be in an amount less than the balance of rent due.  The Lessee agrees to provide the Lessor with the name of Lessee's Crop Insurance supplier, along with a signed Assignment of Indemnity Form.

Should the LESSEE fail to assign such a lien to the LESSOR, or, should the crop planted on the property described herein fail to produce the revenue pledged by the lien against a said crop, the Lease will at the option of the LESSOR, terminate and the LESSEE herein shall forfeit all payments previously received by the LESSOR as rent for the property described and shall remain liable to the LESSOR for the balance of rent not paid.  A 10% late fee will be added to any balance of rent not paid prior to the expiration date of this lease and collected as additional rent.

Should the LESSEE fail to pay or secure payment of the balance of the rent due as specified herein then this Lease shall, at the option of the LESSOR, terminate and the __10%__ payment which accompanied the bid for this Lease will be forfeited by the LESSEE to the LESSOR.

LESSEE shall submit to LESSOR as payment in lieu of taxes on the Tract(s) the sum of $9.00 per acre shown in bid documents per year and payable as follows (HB 431 '07):  A certified or cashier's check made payable to the Tax Collector of the County in which the land is located.  Said check will be forwarded to the Tax Collector by LESSOR to be applied to the account of LESSEE.

## CONDITION NUMBER 6:

The LESSEE shall not encumber, assign, or otherwise transfer this Lease, any right or interest in this Lease, or any right or interest in the Tract or any of the improvements that may now or hereafter be constructed or installed on the Tract without the express prior written consent of the LESSOR or its legal representative. Neither shall the LESSEE sublet the Tract or any part thereof or allow any other persons, other than the LESSEE's agents, family, and servants, to occupy or use the Tract without the express prior written consent of the LESSOR or its legal representative.  A consent by the



ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

LESSOR or its legal representative to one assignment, subletting, occupation, or use by another person shall not be deemed to be consent to any subsequent assignment, subletting, occupation, or use by another person. Any encumbrance, whether it be voluntary or involuntary, by operation of law or otherwise, is void and shall, at the option of the LESSOR or its legal representative, terminate this Lease.

## CONDITION NUMBER 7:

If for any reason the LESSEE shall abandon this Lease and remove from said Tract of land prior to the expiration hereof, this lease shall be terminated at the option of the LESSOR or its legal representative and shall be henceforth null and void, and the LESSOR or its legal representative shall have the right to enter upon and take possession of said land and to again Lease the same as provided by law. LESSOR shall have the right to seek full restitution from the LESSEE for all damage sustained resulting from the breach of the Lease contract referred to in this paragraph, together with any other amount necessary, including court costs, reasonable attorney fees and interest at the legal rate, to compensate the LESSOR and its legal representative for all detriment proximately caused by the LESSEE's failure to perform his obligations under this Lease.

## CONDITION NUMBER 8:

LESSEE shall not cut or remove from said Tract any timber now standing or growing thereon.

## CONDITION NUMBER 9:

The LESSEE agrees to cultivate the Tract in a husbandman like manner, and not to commit waste thereon, and if in the opinion of the LESSOR or its legal representative waste thereon is or has been committed, then LESSOR shall have the immediate right to terminate this Lease contract, and it or its legal representative to re-enter and re-take the subject lands and take such action as the LESSOR or its legal representative may deem necessary to protect its interest in this Lease and in the Tract or Tracts. LESSEE agrees to reimburse the LESSOR or its legal representative on demand for the costs of any actions taken by the LESSOR or its legal representative pursuant to the provisions of this Condition.

## CONDITION NUMBER 10:

LESSEE agrees to plant, grow and harvest from those crops that are specified in Exhibit "B" attached hereto. Said crops have been assigned bases by the FSA / USDA to the Tract and LESSEE agrees to plant the necessary acreage of each crop so as not to diminish the base acreage of the Tract unless otherwise agreed to in writing by the LESSOR or its legal representative.

## CONDITION NUMBER 11:

LESSEE agrees to notify the LESSOR or its legal representative in writing of his farm plan for each year of this Lease not later than 60 days prior to the date established by the FSA / USDA as their deadline for submitting farm plans to qualify for FSA / USDA crop programs. Should the LESSEE fail to submit such plan by the required date, or should the plan submitted be unacceptable to the LESSOR or its legal representative, or should the LESSEE fail to plant the crops as designated by this Lease in the acreage prescribed by the Lease, then this Lease may be terminated at the option of the LESSOR or its legal representative on a date determined by the LESSOR or its legal representative and the LESSEE will forfeit to the LESSOR all rent paid.

## CONDITION NUMBER 12:

LESSEE agrees that should the LESSEE fail to obtain sufficient crop stands to justify continued cultivation, in accordance with FSA / USDA guidelines and regulations, he will fallow said lands and control the growth of weeds and grass, also in accordance with FSA / USDA guidelines and regulations.

## CONDITIONS NUMBER 13:



ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

# LEASE CONTRACT
# MISSISSIPPI STATE PENITENTIARY LAND

THE DEPARTMENT OF FINANCE AND ADMINISTRATION THROUGH THE BUREAU OF BUILDING, GROUNDS AND REAL PROPERTY MANAGEMENT ON BEHALF OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS / MISSISSIPPI STATE PENITENTIARY HEREAFTER KNOWN AS LESSOR, MAKES THIS CONTRACT TO LEASE:

WITH: _Camron L. Burrell____ -Hereafter known as LESSEE

The Department of Finance and Administration through the Bureau of Building, Grounds and Real Property Management, on behalf of the Mississippi Department of Corrections / Mississippi State Penitentiary, hereinafter referred to as LESSOR, 501 North West Street, Suite 1401B, Jackson, Mississippi 39201, hereby Leases to:

Camron L. Burrell
1948 Autumndale Cove
Cordova, TN 38016

hereinafter referred to as LESSEE, the following described lands, hereinafter referred to as TRACT:

TRACT NUMBER: _27_

COUNTY: _Sunflower____ on the following terms and conditions:

CONDITION NUMBER 1:

This Lease is entered into in accordance with and pursuant to the authority provided in Sections 47 - 5 - 64 and 47 - 5 - 66 of the *Mississippi Code of 1972, Annotated*, as amended. LESSOR and LESSEE acknowledge that said Tract was recommended by the Mississippi Department of Corrections and that the statutory requirements relating to the advertisement for bids and award of Leases have been complied with.

CONDITION NUMBER 2:

The Tract of land listed above is generally described on Exhibit A hereto attached. This is a Lease by Tract Number and not by the acre. The LESSOR does not warrant the number of acres of land in the respective Tract.

CONDITION NUMBER 3:

The primary term of this Lease shall be for a period of ~~three (3)~~ Eight (8) KEA years commencing on ____April 3rd, 2019 and ending on ____January 14_____, 202~~7~~, in accordance with Mississippi Code Section 47-5-64 . . . *for not less than three (3).... years....and no more than eight (8).*

The current period is for Year __1__ on said three (3) year lease beginning ____April 3rd__, 2019 and ending on ____January 14_____, 2020.

Lease rent, in full, shall be due annually, in accordance with Condition Number 4b through 4d of the original Lease, and in accordance with Mississippi Code Section 47-5-66 . . . *shall be due on the anniversary date for each following year of the lease. . . .* including primary and renewal terms.

All other terms and conditions of the Original Lease shall remain the same.

CONDITION NUMBER 4:

If, upon expiration of the primary term of this lease, LESSOR shall decide to re-lease the subject property, LESSEE, at the option of LESSOR, shall have the right to renew the existing lease under the same terms and conditions as set forth herein for additional terms of one year each. In order to exercise said right LESSEE must comply with the following:

Mail - Paul Robinson - Outlook

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

Ex C

## Fwd: Congratulations - Your Offer Has Been Accepted

**cgtfmllc@outlook.com**
Tue 12/10/2019 3:24 PM
**To:** problaw937@hotmail.com <problaw937@hotmail.com>

Get Outlook for Android

**From:** no-reply@indigoag.com <no-reply@indigoag.com>
**Sent:** Friday, September 27, 2019 7:58:05 AM
**To:** cgtfmllc@outlook.com <cgtfmllc@outlook.com>
**Subject:** Congratulations - Your Offer Has Been Accepted

Go to your account

### Your Offer AC6QG8B Has Been Accepted

# Soybeans

| | |
|---|---|
| Contract | **Basis** |
| Price | **-$0.25 Jan 2020** |
| Freight | Grower Delivered (FOB Destination) |
| Buyer | Louis Dreyfus Company-Rosedale 016523 (Facility) |
| Quantity | 10,000 Bushels |
| Expiration | Good til Cancel |
| Seller | cameron Burrell |
| Entity Account | Cameron Burrell |
| Offer ID | AC6QG8B |

## View Accepted Offers



Case 2:20-cv-02035-MSN-dkv   Document 1-1   Filed 01/16/20   Page 25 of 32   ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

Ex C Cont

## Fwd: Congratulations - Your Offer Has Been Accepted

**cgtfmllc@outlook.com**
Tue 12/10/2019 3:25 PM
To: problaw937@hotmail.com <problaw937@hotmail.com>

Get **Outlook for Android**

---

**From:** no-reply@indigoag.com <no-reply@indigoag.com>
**Sent:** Friday, September 27, 2019 7:59:13 AM
**To:** cgtfmllc@outlook.com <cgtfmllc@outlook.com>
**Subject:** Congratulations - Your Offer Has Been Accepted

Go to your account

Your Offer AC4AM2T Has Been Accepted

# Soybeans

| | |
|---|---|
| Contract | Basis |
| Price | -$0.25 Jan 2020 |
| Freight | Grower Delivered (FOB Destination) |
| Buyer | Louis Dreyfus Company-Rosedale 016523 (Facility) |
| Quantity | 10,000 Bushels |
| Expiration | Good til Cancel |
| Seller | cameron Burrell |
| Entity Account | Cameron Burrell |
| Offer ID | AC4AM2T |

View Accepted Offers

ExC Cont

ELECTRONICALLY FILED
2020 Jan 13 12:46 AM
CLERK OF COURT

## Fwd: Congratulations - Your Offer Has Been Accepted

cgtfmllc@outlook.com
Tue 12/10/2019 3:26 PM
To: problaw937@hotmail.com <problaw937@hotmail.com>

Get Outlook for Android

**From:** no-reply@indigoag.com <no-reply@indigoag.com>
**Sent:** Friday, September 27, 2019 7:58:53 AM
**To:** cgtfmllc@outlook.com <cgtfmllc@outlook.com>
**Subject:** Congratulations - Your Offer Has Been Accepted

°indıgo™

Go to your account

Your Offer AC60ZET Has Been Accepted
# Soybeans

| | |
|---|---|
| Contract | Basis |
| Price | -$0.25 Jan 2020 |
| Freight | Grower Delivered (FOB Destination) |
| Buyer | Louis Dreyfus Company-Rosedale 016523 (Facility) |
| Quantity | 10,000 Bushels |
| Expiration | Good til Cancel |
| Seller | cameron Burrell |
| Entity Account | Cameron Burrell |
| Offer ID | AC60ZET |

View Accepted Offers

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT



**Fw: Letter showing 2019 Taxes are paid**

Cameron Burrell

Thu 12/12/2019 10:27 AM

To: Cameron Burrell <cgtfmllc@outlook.com>

---

**From:** cgtfmllc@outlook.com
**Sent:** Monday, September 30, 2019 10:08 AM
**To:** Aimee Moncure <Aimee.Moncure@dfa.ms.gov>
**Subject:** Re: Letter showing 2019 Taxes are paid

Greetings Aimee,

Hope all is well. I need to get my new account manager in contact with you in regards to paying the rent on tracts 3 and 27. I will be working with Indigo Ag here in Memphis and they need some information from you to set you up payments to the State of MS/MSDOC when my soybeans are delivered to the grain elevators.

Upon you receiving this email and giving the green light, I will email her your contact information.

Thanks again.

Regards,

Cameron Burrell
901.490.5270

---

Get **Outlook for Android**

---

501 North West Street, Suite 1401 B
Jackson, MS 39201



ELECTRONICALLY FILED
2020 Jan 16 10:26 AM
CLERK OF COURT



## Fwd: -Early delivery-LDC Rosedale (TX-2491,TX-2486,TX-2492)

**cgtfmllc@outlook.com**
Tue 12/10/2019 3:07 PM
To: problaw937@hotmail.com <problaw937@hotmail.com>

Get Outlook for Android

---

**From:** Mary Beth Gammel <mgammel@indigoag.com>
**Sent:** Friday, October 4, 2019 9:11:49 AM
**To:** cgtfmllc@outlook.com <cgtfmllc@outlook.com>; Amber Blair <ablair@indigoag.com>
**Subject:** RE: -Early delivery-LDC Rosedale (TX-2491,TX-2486,TX-2492)

Sounds great!

A logistics coordinator will be reaching out to you today and sending delivery tickets and instructions.

Also- I was able to speak with both Cathy and Wade at the state of Ms. yesterday. They stated that there was a balance of $60,615 on Tract 3 and $28,989 on Tract 27. Would you like to handle this as a money split? If so- we can allocate the money over to the Department of Corrections after the grain has been delivered and contract priced.

Just let us know.

Mary Gammel
50 South B.B. King Blvd
Memphis, TN 38103



Boston • Memphis • Brazil • Argentina • Australia

**From:** cgtfmllc@outlook.com <cgtfmllc@outlook.com>
**Sent:** Friday, October 4, 2019 8:50 AM
**To:** Amber Blair <ablair@indigoag.com>
**Cc:** Mary Beth Gammel <mgammel@indigoag.com>
**Subject:** Re: -Early delivery-LDC Rosedale (TX-2491,TX-2486,TX-2492)

Greetings,

Planning on harvest and delivery on the first 10k bushels on Monday of next week, weather permitting.

Regards,

Cameron Burrell
901.490.5270

Get Outlook for Android

about:blank

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

Ex. E.

**indigo**

VIA US MAIL

Date:       December 4, 2019

To:         Paul A. Robinson, Jr., 3749 Marty St., Memphis, TN 38109

Re:         Notice of Cancelation – Cameron Burrell

Dear Mr. Robinson,

Thank you for speaking with us in regard to your representation of Mr. Cameron Burrell. As you know, Mr. Burrell has legally-binding contracts, governed by National Grain and Feed Association (NGFA) Trade Rules, with Indigo Ag, Inc. to sell #1 yellow soybeans through the Indigo Marketplace. Before we learned of your representation, Indigo customer relations personnel spoke with Mr. Burrell, who was unable to offer adequate assurances that he could or would comply with his contractual obligations. Instead, Mr. Burrell agreed on a cancelation per the terms of this letter. We sincerely would like to get Mr. Burrell paid for what Indigo owes him, minus necessary cancelation offsets and deductions, and this correspondence allows us to do that per the terms of Mr. Burrell's contract and NGFA rules. Therefore, after the exercise of due diligence and in consideration of the agreed upon terms herein, we hereby declare Mr. Burrell in default of the following obligations:

#1 Yellow Soybeans Sold to

Indigo Ag, Inc.
50 South B.B. King Blvd.
Memphis, TN 38103

| Offer ID | AC6QG8B | AC4AM2T | ACLZQAI | AC60ZET | ACCAJ54 |
|----------|---------|---------|---------|---------|---------|
| **Shipment Dates** | 11.1.19-11.30.19 | 10.15.19-11.14.19 | 10.15.19-11.14.19 | 10.15.19-11.14.19 | 11.1.19-11.30.19 |
| **Price** | -$0.25 Jan 2020 | -$0.25 Jan 2020 | $8.96 | -$0.25 Jan 2020 | -$0.25 Jan 2020 |
| **Bushels delivered** | 0 | 0 | 8,688.58 | 0 | 0 |
| **Defaulted Bushels** | 10,000 | 10,000 | 1,311.42 | 10,000 | 10,000 |

Failure to Perform Delivery of Contract is a violation of

NGFA Grain Trade Rules Rule 28.

"If the Seller fails to notify the Buyer of his inability to complete his contract, as provided above, the liability of the Seller shall continue until the Buyer, by the exercise of due diligence, can determine whether the Seller has defaulted. In such case it shall then be the duty of the Buyer, after giving notice to Seller to complete the contract, at once to:

Indigo Ag, Inc.   •   500 Rutherford Avenue   •   Boston, MA 02129   •   Tel: 1 (844) 828-0240   •   www.indigoag.com



12/10/2019, 10:31 AI

ELECTRONICALLY FILED
2020 Jan 16 2:48 AM
CLERK OF COURT



(1) agree with the Seller upon an extension of the contract; or
(2) buy-in for the account of the Seller, using due diligence, the defaulted portion of the contract; or
(3) cancel the defaulted portion of the contract at fair market value based on the close of the market the next business day."

At this time Indigo Ag, Inc. declares Mr. Burrell in default.

Per prior conversations with Indigo non-attorney personnel, Mr. Burrell has agreed that 41,311.42 bushels remain undelivered and that Indigo is entitled to cancel Offer IDs AC6QG8B, AC4AM2T, ACLZQAI, AC60ZET, and ACCAJ54 as to those undelivered bushels.

Indigo will issue Mr. Burrell payment for the delivered bushels, minus deductions, as soon as possible. His payment will be accompanied by a settlement statement, which will set forth all payments owed, deductions therefrom, and set-offs, as explicitly agreed to by Mr. Burrell in the Marketplace Seller Agreement. **Indigo will deduct from Mr. Burrell's payment $40,485.19, which fairly and accurately reimburses Indigo for costs incurred by virtue of this cancelation, plus additional deductions for transport costs as to be reflected on the forthcoming settlement statement.**

You have kindly informed us of the lien the State of Mississippi has against your client. As such, the payment to your client will be in both his name and to the State of Mississippi. It is your client's responsibility to ensure that any commitments he has to the State of Mississippi are satisfied.

We greatly appreciate your reviewing this letter with your client. This correspondence is a notice of default and an attempt to resolve our claims against Mr. Burrell without legal action, and we are hopeful that we will be able to do so. The undelivered bushels are hereby canceled per the terms of the NGFA rules, and we reserve the right to seek all available remedies for losses and damages if Mr. Burrell is not agreeable to the resolution put forth.

We hope to hear from you soon and look forward to resolving this matter.


Very truly yours,


Adam Lazarov, Commercial Legal Counsel, Indigo Ag, Inc.
Email: alazarov@indigoag.com
TN Bar #: 033158



**USDA** SUNFLOWER FSA OFFICE
210 N MARTIN LUTHER KING
INDIANOLA, MS 38751-0000
Phone: (662)887-9799

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

# Payment Statement

**Retain for Tax Purposes**
FSA will not issue 1099 tax forms to customers receiving
less than $600 in reportable benefits in a calendar year.

**Statement Date: 08/21/2019**


CAMERON LAMAR BURRELL SR
1948 AUTUMNDALE CV
CORDOVA TN 38016-4012

0010757
T23

## Payment Summary

| | |
|---|---|
| **Gross Payment** | $42,753.81 |
| Deductions | - $0.00 |
| **Net Payment** | $42,753.81 |

## Payment Detail

### TMP/MPP 2019 NON-SPECIALTY CROPS

FSA Payment for CP 2019 02

Transaction control number: 32060477

| | |
|---|---|
| **Gross Payment** | $42,753.81 |
| Deductions | - $0.00 |
| **Net Payment** | ACH sent to CAMERON LAMAR BURRELL SR at REGIONS BANK account ending in 3620 on/about 08/23/2019 | $42,753.81 |

**Notes**
Program Year: 2019
Program Name/Type: Market Facilitation Program - NS Crops
Payment Amount: $42,753.81
You may appeal this payment and
how it was calculated by filing a written request to the County Committee within 30 calendar
days after you receive this statement and by explaining why you believe this payment is
erroneous. If you appeal to the County Committee, you have the right to an informal hearing
which you or your representative may attend either personally or by telephone. If you appeal
to the County Committee, you may later appeal an adverse determination of the County
Committee to the FSA State Committee or the National Appeals Division or request mediation.
If you do not timely file a written appeal, this payment is a final administrative
determination with respect to this matter according to the regulations at 7 CFR Part 780.






USDA is an equal opportunity provider, employer, and lender.


01/01

This statement was printed by the USDA/FSA National Office. The Debt Collection Improvement Act of 1996 (DCIA) (31 USC 3716) requires Treasury to reduce federal
payments to satisfy overdue federal debt. Treasury collections will not appear as deductions on this statement. If the amount on this statement does not match the amount
you receive, questions may be directed to Treasury at 1-800-304-3107. Receipt of this statement does not guarantee payment. FSA/CCC is not liable for overdrafts or
failure to verify receipt of funds.

ELECTRONICALLY FILED
2020 Jan 13 12:48 AM
CLERK OF COURT

12/3/2019

**Filing Type: UCC1F - Farm Lien**

| File Number | Filing Date | Filing Type | Lapse Date |
|---|---|---|---|
| 20193107151F | 12/3/2019 | UCC1F - Farm Lien | |

**Debtor**
**Burrell, Cameron**
1948 AUTUMNDALE CV, CORDOVA, TN, 38016

**SecuredParty**
**State of Mississippi/Department of Finance &**
**Administration/ Department of Corrections**
501 N. West St., Jackson, MS, 39201

Ex G